590 So.2d 776 (1991)
STATE of Louisiana
v.
Albert VOORHIES, Jr.
No. Cr. 91-118.
Court of Appeal of Louisiana, Third Circuit.
November 13, 1991.
*777 Cliff Strider, Asst. Dist. Atty. and Kathrine Williamson, Alexandria, for plaintiff-appellant.
Charles Scott, Alexandria, for defendant-appellee.
Before GUIDRY, DOUCET and KNOLL, JJ.
GUIDRY, Judge.
Defendant, Albert Voorhies, Jr., was charged by bill of information with the attempted forcible rape of Ms. Sylvia Davis, a violation of La.R.S 14:42.1 and La.R.S. 14:27. Defendant was convicted of the charged offense by a jury following a two day trial. On March 1, 1990, the defense filed a motion for post verdict judgment of acquittal (La.C.Cr.P. art. 821) alleging that the evidence adduced at trial was insufficient to support the jury's verdict of guilt. The trial court took the matter under advisement until November 30, 1990, when the motion was granted. The State appeals the trial court's ruling based on one assignment of error.

ASSIGNMENT OF ERROR
The State contends that the trial court erred when it granted defendant's motion for post verdict judgment of acquittal. Specifically, the State argues that the trial judge improperly used the motion for new trial standard of review and re-evaluated the credibility of the witnesses at trial in order to grant defendant's motion.

OPINION
The United States Supreme Court has outlined the critical legal distinction between a trial judge reweighing the evidence as a thirteenth juror and setting aside the verdict based on his disagreement with the jury's resolution of the evidence, and the situation where the trial judge determines that the evidence was legally insufficient to support a conviction. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The thirteenth juror standard, when a trial judge reweighs the evidence, is the proper standard the trial judge should use to determine whether a defendant is entitled to a new trial. State v. Landry, 524 So.2d 1261 (La.App. 3rd Cir.1988), writ granted in part, 531 So.2d 254 (La.1988), appeal after remand, 546 So.2d 1231 (La.App. 3rd Cir.1989).
In reviewing the sufficiency of evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard, which was adopted by the legislature in enacting La.C.Cr.P. art. 821 pertaining to post verdict motions for acquittal based on insufficiency of evidence, is that the court must determine that the evidence, viewed in the light most favorable to the prosecution, was insufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984).
In the case at hand, defendant filed a motion for post verdict judgment of acquittal based upon insufficiency of the evidence. No Motion for new trial was *778 filed by the defense. On November 30, 1990, the trial judge granted defendant's motion and stated:
"BY THE COURT: As I told y'all at the completion of the trial on this one, I just feel that this motion should be granted because it's just my feeling that the evidence in this case was just notI heard the same evidence that the jury heard and they had a different point of view than I do. I just feel that in this one that that conviction just should not stand and so, I will grant the motion."
We find that the trial judge erred when he employed the motion for new trial/thirteenth juror standard to justify granting of defendant's motion for post verdict judgment of acquittal. In addressing the question of sufficiency of the evidence, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. While the court should not substitute its judgment for that of the jury, it must insure that the evidence presented was such that reasonable jurors would be convinced beyond a reasonable doubt. State v. Mussall, 523 So.2d 1305 (La.1988). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. King, 563 So.2d 449 (La.App. 1st Cir. 1990).
A similar situation existed in State v. Dupre, 537 So.2d 1200 (La.App. 3rd Cir. 1989), writ denied, 541 So.2d 891 (La.1989). This court held that the trial court's grant of a post verdict judgment of acquittal was improper because the jury's decision was rational and it could have found defendant guilty beyond a reasonable doubt. The judge who granted defendant's motion improperly re-evaluated the credibility of the witnesses which is not allowed under the more restrictive Jackson rationale.
The elements of the crime of forcible rape are set out in La.R.S. 14:42.1 which provides in pertinent part:
"Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape."
La.R.S. 14:41 defines rape as "the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent". Attempt is defined in La.R.S. 14:27 and states in pertinent part:
"Any person, who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose."
Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1).
In order to commit attempted forcible rape, the offender must actively desire to commit rape by preventing the victim from resisting the act by force or threats where the victim may reasonably believe that such resistance would not prevent the rape. A conviction of an attempted offense must rest upon the sufficient proof that the offender actually desired to cause the proscribed criminal consequences to follow his act or failure to act and that the offender committed or omitted an act for the purpose and tending directly toward the accomplishing of his object. Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the accused. Furthermore, specific intent is a legal conclusion ultimately to be resolved by the trier of fact. State v. Volkmann, 539 So.2d 1279 (La.App. 3rd Cir.1989).
*779 At trial, the victim testified that she played cards with friends until approximately 2:00 in the morning on October 14, 1989. Ms. Davis asked a friend, Carolyn Richardson, to drop her off at a nearby establishment called the "Eat-a-Bite" to purchase food. The victim intended to visit friends near the establishment until the buses started to run in the morning. At approximately 2:30 a.m., Ms. Davis was dropped off and, after purchasing some food, she talked with a friend, Carolyn Faye Vaughn, and several other people until approximately 8:00 a.m.
The victim and Ms. Vaughn, after leaving the area near the "Eat-a-Bite", saw defendant close to a bus stop at approximately 8:30 a.m. Ms. Davis asked, and defendant agreed, to give her a ride home in exchange for a couple of dollars for gas. Defendant first got gas and then told the victim he had to run some errands before taking her home. After driving around for a while, defendant pulled his car off onto a dirt road near Karst Park located in Alexandria, Louisiana.
Defendant asked the victim if she would "suck" his "dick" if he shared a rock of crack cocaine with her. When Ms. Davis refused, defendant told her that she was going to "suck his dick" and "fuck him". When the victim responded "no", defendant picked up a Thunderbird wine bottle and told her that if she did not take off her clothes he would "bust" her "upside" her "mother fucking head", and "bitch, you better take off your clothes now". When defendant started to take the victim's shirt off, a white car pulled up and she escaped as defendant was distracted. The victim asked for help from the occupants of the white car screaming "this man is trying to rape me". Defendant got into his car, started to back up almost hitting Ms. Davis, and ran the car into a ditch as he attempted to flee the scene.
Major Bill Robinson of the Rapides Parish Sheriff's Office testified that while off duty at approximately 9:00 a.m. on October 14, 1989, he was helping his son clean squirrels. After his son informed him that shots were fired on their land, Major Robinson and his son drove a white unmarked police unit around the family property to investigate. On the way back, the major saw a car parked on a dirt side road which was not there when he passed the first time.
Major Robinson testified that he saw two people in the car who appeared to be in some kind of argument. As he drove up, the victim got out on the passenger side and went to the back of the car where defendant met her and another struggle ensued. After the victim jerked free and started to walk away, defendant attempted to back the car up but got stuck in a gulley.
The victim repeatedly told Major Robinson that defendant was trying to rape her. She was upset and appeared to be afraid by the tone of her voice. Ms. Davis told the major that defendant was supposed to take her home but he drove around on the pretext of running an errand and finally pulled off onto this dirt road. The victim also told Major Robinson that defendant offered her drugs and threatened her bodily. When Major Robinson talked with defendant he said they had been together all night and that he spent money on her and felt she owed him.
Ms. Carolyn Faye Vaughn testified that she saw the victim walk up alone to the "Eat-a-Bite" at approximately 2:30 in the morning on October 14, 1989. Ms. Davis ate and the two women talked until daybreak with some of Ms. Vaughn's friends near the establishment. Ms. Vaughn walked with the victim to a bus stop at approximately 8:30 a.m. because it was on her way home. The victim told Ms. Vaughn that she was going to ask defendant if he would take her home if she gave him a couple of dollars for gas, and the witness saw the two leave together.
Detective Sammy Theils of the Rapides Parish Sheriff's Office testified that he was assigned defendant's case. Detective Theils received consent to search the vehicle driven by defendant from Barbara Wynn, the owner of the car and defendant's girlfriend with whom he lived. After *780 searching the vehicle, the detective recovered a Thunderbird wine bottle.
The defendant, testifying on his behalf, claimed that Ms. Davis approached him on the street and told him that if he would buy her some rock cocaine, she would do anything he wanted her to do. Defendant claims he agreed to this proposition and that he, the victim and four other people all left in the car together. No one came forward to substantiate defendant's version of his meeting with Ms. Davis.
Further, defendant was discredited by the State on cross-examination. Defendant admitted that he had three prior convictions and maintained that all were the result of guilty pleas. Defendant maintained that if he committed a crime and was caught, he owned up to it. The prosecutor subsequently got defendant to admit that he had seven convictions and that most of these resulted from plea bargains.
We find that when the evidence is viewed in the light most favorable to the prosecution, the defendant's conviction must stand. The outcome of this case hinged directly upon the jury's determination of witness credibility. The victim testified that defendant attempted to rape her, while he claims she promised him sex in exchange for drugs. The testimony of the victim alone is sufficient to prove the essential elements of attempted forcible rape. State v. Doremus, 571 So.2d 831 (La.App. 3rd Cir.1990). Moreover, the question of credibility is within the sound discretion of the trier of fact. The jury's factual determinations are entitled to great weight and will not be disturbed unless contrary to the evidence. State v. Klar, 400 So.2d 610 (La.1981), citing State v. Cobbs, 350 So.2d 168 (La.1977). In this instance, the jury determined that the State's witnesses were more credible than those presented by the defense. There is nothing in the record to suggest that the jury's determination of credibility in this case was contrary to the evidence, particularly in light of the Jackson standard of review. A rational trier of fact giving proper weight to the victim's testimony could have found beyond a reasonable doubt that defendant attempted to forcibly rape the victim.
For the foregoing reasons, the judgment of the trial judge is reversed and set aside. It is further ordered, adjudged and decreed that the jury verdict which found defendant guilty of attempted forcible rape be reinstated and this matter is remanded to the trial court for sentencing of defendant.
REVERSED AND REMANDED FOR SENTENCING.