512 So.2d 467 (1987)
STATE of Louisiana
v.
Alvin Joseph ORGERON.
No. KA 86 1505.
Court of Appeal of Louisiana, First Circuit.
June 23, 1987.
Rehearing Denied August 26, 1987.
*468 Camille A. Morvant, II, Asst. Dist. Atty., Thibodaux, for State of La.
Eugene G. Gouaux, Jr., Lockport, for Alvin Orgeron.
Before SAVOIE, CRAIN and LeBLANC, JJ.
SAVOIE, Judge.
Defendant, Alvin Joseph Orgeron, was charged by bill of information with forcible rape, in violation of LSA-R.S. 14:42.1. Defendant was tried by jury, which returned a responsive verdict of guilty of attempted forcible rape. The trial court sentenced defendant to a fifteen year term of imprisonment at hard labor and stated that "at least" seven years of the sentence must be served without benefit of probation, parole or suspension of sentence. Defendant has appealed, urging eight assignments of error, to wit:
1. The verdict of the jury is contrary to the law and the evidence.
2. The sentence imposed by the trial court is constitutionally excessive.
3. The trial court failed to adequately comply with the requirements of LSA-C. Cr.P. art. 894.1 in sentencing defendant.
4. The trial court erred in granting the state's motion of intent to use other crimes evidence.
5. The trial court erred in taking into consideration in its reasons for sentencing, unproved and unsubstantiated allegations contained in the presentence investigation report.
6. The trial court erred, during jury deliberations, by responding to a juror's question regarding the effect of the jury's failure to reach a verdict.
7. The trial court erred in allowing Dr. William Janzen to testify from his report which was not furnished to defense counsel in accordance with counsel's motion for discovery.
8. The trial court committed reversible error by personally entering the jury room during jury deliberations to take dinner orders.
Assignments of error three, five and seven were not briefed on appeal and are, therefore, considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
The record reflects that the eight year old victim of the instant offense is defendant's niece. At the time of the offense, the victim's mother and her four children were living at the home of the victim's grandparents; defendant, his wife and daughter also were residing with the grandparents.
The victim testified that defendant had sex with her in his bedroom at her grandparents' house. It occurred on occasions when she and defendant were alone. The last time it happened was during December 1985. She testified that defendant took off all her clothes and put his penis inside her vagina. At the time defendant was doing this to her, she was "trying to make him stop." The victim further testified that defendant had done the same thing to her once or twice prior to December 1985. Additionally, defendant made her engage in oral sex with him.
Dr. Michael Stewart Snyder, a physician, testified that the victim was brought to him *469 on approximately February 26, 1986. He interviewed the victim and gave her a physical examination. The victim was extremely tense, and Dr. Snyder experienced difficulty in obtaining information from her. The results of the physical examination showed that the victim's physical condition was normal. However, Dr. Snyder testified that it was possible for slight or partial vaginal penetration to have occurred and within a period as brief as seventy-two hours thereafter a medical examination would not detect it.
Dr. William Janzen, a psychologist, qualified as an expert in child psychology and child sexual abuse. He testified that he met with the victim on June 11 and July 2, 1986, and concluded that she was sexually abused.
Defendant took the stand in his own defense and denied that he ever sexually involved himself with the victim. Defense witness Crystal Ann Orgeron, defendant's ten year old daughter, testified that she overheard the victim telling the victim's little sister that "Uncle Alvin is innocent." Crystal Ann testified that the statement was made during a recess at Lockport Lower Elementary School. During the victim's own trial testimony, she emphatically denied having ever made the alleged statement. Another defense witness, Belinda Theriot, testified that she is a good friend of defendant and defendant's wife and that the victim's reputation in the community is that the victim seldom tells the truth. However, Theriot admitted, during cross-examination, that the victim "lies about like" her own children.
ASSIGNMENT OF ERROR NO. ONE:
By means of this assignment, defendant contends that the verdict is contrary to the law and the evidence. He argues that the only evidence of vaginal sexual intercourse is the testimony of the victim and her testimony is contradicted by his own testimony. He further argues that the testimony of Belinda Theriot and Crystal Ann Orgeron "sheds a serious doubt that the victim is telling the truth." Defendant also asserts that the state failed to prove that the victim was prevented from resisting the act by force or threats of physical violence.
The constitutional standard for testing the sufficiency of evidence, as set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Garcia, 483 So.2d 953 (La.1986). We note that, in order to challenge a conviction on the basis of insufficiency of the evidence, the defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See LSA-C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error.
Forcible rape is defined in LSA-R.S. 14:42.1(A) as follows:
Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
In order to attempt to commit a crime, an offender must actively desire to cause the specific results required by a particular criminal statute and do or omit an act for the purpose of and tending toward the accomplishing of his object. LSA-R.S. 14:10 and 27. Accordingly, in order to commit an attempted forcible rape, an offender must actively desire to commit a rape by preventing the victim from resisting the act by force or threats where the victim may reasonably believe that such resistance would not prevent the rape. State v. Magee, 491 So.2d 454 (La.App. 1st Cir.1986).
Initially, we note that the testimony of the victim alone is sufficient to prove the elements of the offense. State v. Magee, supra. In finding defendant guilty of attempted forcible rape, it is obvious that *470 the jury believed the victim. The credibility of the victim's testimony is a matter of weight of the evidence. A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Johnson, 446 So.2d 1371 (La.App. 1st Cir.), writ denied, 449 So.2d 1347 (La.1984). The victim's testimony showed that defendant disrobed her and penetrated her vaginally; and, at the time he did so, she tried to make him stop. Accordingly, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the crime of attempted forcible rape.
This assignment, therefore, lacks merit.
ASSIGNMENT OF ERROR NO. TWO:
By means of this assignment, defendant contends that his sentence is excessive.
Article I, § 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of a sentence is a question of law which is reviewable. See State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. State v. Telsee, 425 So.2d 1251 (La.1983). In other words, a sentence may be both within the statutory limits and constitutionally excessive. State v. Sepulvado, supra. A sentence is excessive when it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine whether a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether the penalty is so disproportionate as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980). Because of the wide discretion afforded the trial court in imposing sentence, a sentence within statutory limits will not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Abercrumbia, 412 So.2d 1027 (La.1982).
Attempted forcible rape is punishable by imprisonment at hard labor for not less than two and one-half nor more than twenty years; and at least one year of the sentence must be served without benefit of probation, parole, or suspension of sentence. LSA-R.S. 14:42.1 and 27. In this case, defendant was sentenced to serve a fifteen year term of imprisonment at hard labor. The trial court also stated that at least seven years of the sentence must be served without benefit of probation, parole or suspension of sentence.
A review of the record in this case reveals that the trial court ordered a presentence investigation report. At sentencing, the trial court noted that, after listening to the trial testimony and reviewing the presentence investigation report, it was convinced that the jury was correct in returning a verdict of guilty of attempted forcible rape and that the jury could have convicted defendant of forcible rape. The trial court noted that defendant began sexually assaulting his niece when she was about six or seven years old and culminated the abuse by attempting to forcibly rape her or by raping her. The trial court opined that the pattern of defendant's behavior toward the victim was consistent with that of a person prone to sexually abuse people under his control. The trial court noted that the threat of harm to the child was severe and that defendant used subterfuge and force to get the child to perform sex acts with him. He violated the child's confidence and her body. The trial court noted that a child's home is usually considered by the child as a place of comfort, refuge and security. Defendant's actions converted the home into a place of nightmarish hell for the victim. The court noted that the psychological damage to the child could destroy the child's chance of leading a normal and mentally healthy life. The court stated that, in addition, society is devastated by the rape or attempted rape of one family member by another. Such conduct can destroy a family unit, and in this case it did. The trial court noted that the family unit, as we all know, is the foundation of our society, and for centuries incestuous relationships have *471 been condemned by society as harmful to the overall health and well-being of the human race. The court noted that the instant offense was one of the most serious violations of the crime of attempted forcible rape.
In imposing sentence, the trial court noted that the presentence investigation report recommended the maximum sentence in this case. The court noted that, on the basis of the absence of a prior criminal record and defendant's good work history, it would not impose the maximum sentence. The court, however, stated that the sentence it imposed would be serious enough to make defendant realize the seriousness of his actions and it should prevent defendant from engaging in such conduct in the future. The trial court opined that it knew that the sentence imposed in this case would seem harsh to defendant's family and friends but that in good conscience it could not apply a different set of rules to defendant because of friendship or the existence of mutual friends. The trial court stated that a review of the applicable penalty provision for the instant offense demonstrated to the court that defendant needed correctional treatment by commitment to an institution and that a lesser sentence would deprecate the seriousness of the crime. The court stated that it could not suspend defendant's sentence or satisfy itself that probation would be sufficient because defendant's criminal conduct posed a serious threat to society. The court further stated that it did not find any grounds to excuse or justify defendant's conduct.
Given the trial court's wide discretion to impose a sentence within statutory limits, we cannot say that the sentence imposed in this case is excessive. The trial court fully and carefully considered the range of sentencing alternatives and individualized the sentence to the particular defendant for the particular crime involved.
This assignment is without merit.
We note, however, that the sentence imposed by the trial court is an illegal sentence. The court is required to impose a determinate sentence. LSA-C.Cr.P. art. 879. Here the trial court sentenced defendant to fifteen years at hard labor and stated that "at least" seven years of the sentence must be served without benefit of probation, parole or suspension of sentence. The sentence imposed here gives no basis for determination of when defendant might be eligible for parole since it fixes no maximum for the number of years to be served without eligibility. State v. Green, 468 So.2d 1344 (La.App. 1st Cir.1985). Because a determination of the maximum number of years to be served without eligibility involves sentencing discretion, we vacate the instant sentence and remand to the trial court for resentencing not inconsistent with the views expressed herein. See State v. Fraser, 484 So.2d 122, 124 (La. 1986).
ASSIGNMENT OF ERROR NO. FOUR:
By means of this assignment, defendant contends that the trial court erred by granting state's motion to use other crimes evidence. Defendant argues that the state failed to show that defendant committed the other crimes or that the probative value of the evidence outweighed the risk of prejudice. Defendant concludes that the trial court committed reversible error by allowing the evidence of other crimes into evidence.
The record reflects that the state filed a notice of intent to use other crimes evidence on June 20, 1986.[1] Pertinent minute entries show that the trial court took the *472 matter under advisement and that at defendant's July 9 trial, after the jury was selected and sworn to serve in the case, the trial court took up the matter of the state's notice to use other crimes evidence and ruled that it would admit the evidence of the other crimes.
Although evidence of other crimes related to the offense with which a defendant is charged is generally inadmissible, Louisiana courts have recognized certain exceptions to the general exclusionary rule, including the admissibility of evidence of prior sex crimes committed against the same prosecutrix. See State v. Acliese, 403 So.2d 665 (La.1981). In Acliese, the court concluded that evidence of prior rapes or attempted rapes by the defendant of the eleven-year-old daughter of the woman with whom he was living was properly admitted in the defendant's prosecution for aggravated rape of the child. In the instant case, we note that the language of the state's notice of intent to use other crimes evidence, setting forth the purposes for which the evidence would be introduced, essentially tracked the language used in the notice given by the state in Acliese case. Because the other crimes evidence set forth in the state's notice and the testimony adduced at trial pertaining to the other crimes evidence related to prior sex crimes committed by defendant against the same prosecutrix, the evidence was admissible.
This assignment lacks merit.
ASSIGNMENTS OF ERROR NOS. SIX AND EIGHT:
By means of assignment number six, defendant contends that the trial court erred, during jury deliberations, by responding to a juror's question regarding the effect of the jury's failure to reach a verdict. In assignment number eight, defendant contends that the trial court committed reversible error by personally entering the jury room during deliberations to take dinner orders. Defendant argues that the trial court's response to the juror's question caused the jury's verdict to be based upon something other than the evidence presented at trial. He argues that the trial court, by its mere presence in the jury room and its response to the juror's question, influenced the jury and conducted itself in a prejudicial manner tantamount to having unauthorized communications with the jury.
In reference to the allegation to which assignment six relates, defense counsel submitted, for purposes of this appeal, a document entitled "ADMISSION OF FACT". The document, which is not notarized, purports to bear the signatures of defense counsel and the prosecutor and states that the alleged error occurred in the presence of defense counsel and the prosecutor.[2] However, because the record does not reflect that defense counsel made a contemporaneous objection to the alleged error, while in the jury room or subsequently in the court room, we are unable to consider it. See LSA-C.Cr.P. art. 841; State v. Carter, 459 So.2d 1324 (La.App. 1st Cir.1984), writ denied, 472 So.2d 592 (La.1985). Even were we willing to consider the issue without a contemporaneous objection having been made, we would be unable to do so because there is no record upon which to base our review. Possibly, this issue could be raised by application for post-conviction relief. Compare State v. Tasker, 448 So.2d 1311 (La.App. 1st Cir.), writ denied, 450 So.2d 644 (La.1984).
In reference to assignment number eight, defendant submitted a sworn affidavit of Viola Beard. The affidavit states that Beard was a member of the jury in this case and that the trial judge entered the jury room during jury deliberations to take the jurors' dinner orders.
*473 Initially, we note that it is well established law that "no juror, grand or petit, is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach any indictment or any verdict found by the body of which he is or was a member." LSA-R.S. 15:470; State v. Copeland, 419 So.2d 899 (La.1982). "An exception to this rule exists when there is an unauthorized communication or overt act by a third person which creates an extraneous influence on the jury." State v. Copeland, 419 So.2d at 904.
Assuming arguendo, the correctness of the allegation stated in Beard's affidavit, the allegation does not evidence any attempt on the part of the trial court or anyone else to influence the jury. Under the circumstances presented in the allegation, no substantial right of defendant would have been affected by the trial court's temporary presence in the jury room to take the dinner orders of the jurors. Cf. State v. Montgomery, 432 So.2d 340 (La.App. 1st Cir.1983).
These assignments lack merit.
For the above reasons, defendant's conviction is affirmed. Defendant's sentence is vacated and the matter is remanded to the trial court for resentencing.
CONVICTION AFFIRMED. SENTENCE VACATED AND REMANDED FOR RESENTENCING.
NOTES
[1] The notice of intent to use evidence of other crimes stated, in pertinent part:

That on a random, but continuing basis the defendant, Alvin Orgeron, did sexually abuse and molest [the victim] who is presently 8 years old. The above acts occurred at the residence of the defendant from approximately January, 1985 until February, 1986. The relationship of the defendant and [the victim] is that the defendant is the child's uncle.
The evidence will be introduced to corroborate the offense charged, to show the intimate relations between the parties, to show the lustful disposition of the defendant and to show the probability of him having committed the offense charged.
The purpose of using said crimes is to show defendant's knowledge, intent, system and motive.
[2] The substance of the document, in pertinent part, is as follows:

It is hereby admitted by and between the parties through their respective attorneys, that:
1. During jury deliberations, the Judge, Assistant District Attorney, and defense counsel entered the jury room wherein one of the jurors asked, "What happens if there is a mistrial?" The trial Judge answered, "He will be re-tried." After a moment, the Judge turned to the Assistant District Attorney and said, "It would be left up to the District Attorney." The State's attorney responded that he did not know what action the State would take.